**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                                            |   |                                        |
|--------------------------------------------|---|----------------------------------------|
| V.E.,                                      | * |                                        |
| *Plaintiff,*                               | * |                                        |
|                                            | * | **Civil Action No. 1:22-cv-02338-JRR** |
| v.                                         | * |                                        |
| UNIVERSITY OF MARYLAND                      | * |                                        |
| BALTIMORE COUNTY, MARYLAND,                 | * |                                        |
| *Defendant.*                               | * |                                        |
|                                            | * |                                        |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Defendant University of Maryland Baltimore County's ("UMBC") Motion to Dismiss Plaintiff's Complaint (ECF No. 6; the "Motion"). The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2021). For the reasons that follow, by accompanying order, the Motion shall be granted and the Complaint dismissed with prejudice.

## I.     <u>BACKGROUND</u>[1]

This action arises out of the alleged sexual assault and harassment of Plaintiff V.E. during her tenure as an undergraduate student at UMBC. On December 19, 2022, Plaintiff filed her Amended Complaint alleging that, while she was a student at UMBC and a member of its Swimming and Diving team, she was exposed to a repeated and prolonged pattern of sexual abuse, harassment, and relationship violence from J.W. – her former romantic partner and fellow Swimming and Diving team member. (ECF No. 9, ¶¶ 17-24; the "Complaint.") Plaintiff further

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Amended Complaint.

alleges that, although she reported J.W.'s behavior to UMBC on multiple occasions and through multiple avenues, "UMBC did nothing to protect V.E.," from the continued harassment. *Id.* ¶¶ 25-26.

The Complaint contains a single count for Violation of 20 U.S.C. §§ 1681, *et seq.* – Title IX of the Education Amendments Act ("Title IX") (Count I). Plaintiff seeks (1) compensatory damages in excess of $75,000; (2) interest; (3) attorney's fees; and (4) costs. (ECF No. 9 at 21.) UMBC moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff's claim is time barred by the applicable statute of limitations. (ECF No. 6 at 1.)[2]

## II.   LEGAL STANDARDS

### A.   FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6)

"In *Twombly*,[3] the Court changed significantly how the legal sufficiency of a claim is to be measured when it is attacked under Rule 12(b)(6). As one eminent scholar of federal civil procedure has said of *Twombly*: 'Notice pleading is dead. Say hello to plausibility pleading.'" *Macronix,* 4 F. Supp. 3d at 799-800 (quoting A. Benjamin Spencer, *Plausibility Pleading*, 49 B.C. L. REV. 431, 431-32 (2008)). The "liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2) has been decidedly tightened (if not discarded) in favor of a stricter standard requiring the pleading of facts painting a 'plausible' picture of liability." *Id.; see also Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 262 (4th Cir. 2009) (Jones, J., concurring in part,

---

[2] UMBC's Motion at ECF No. 6 was filed in response to Plaintiff's original complaint filed at ECF No. 1 pursuant to Rules 12(b)(1) and 12(b)(6). The 12(b)(1) grounds targeted Plaintiff's state law claims set forth in the original complaint. Plaintiff amended her complaint (ECF No. 9) to remove all state law claims leaving only the federal claim without substantive factual changes. UMBC's 12(b)(6) grounds target Plaintiff's federal claim. Rather than require UMBC to refile its Motion, the court considers the Motion with respect to Plaintiff's federal claim set forth in the Amended Complaint at ECF No. 9.
[3] *Bell Atl. Corp., v. Twombly,* 550 U.S. 544 (2007)

dissenting in part, and remarking that "*Twombly* and *Iqbal*[4] announce a new, stricter pleading standard.")

A motion asserted under Rule 12(b)(6) "tests the legal sufficiency of a complaint."  It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  *Edwards*, 178 F.3d at (citing *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). The court, however, is ". . . not required to accept as true the legal conclusions set forth in a plaintiff's complaint."  *Id.* (citing *District 26, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1085 (4th Cir. 1979)).

## III.   ANALYSIS

### A.      12(b)(6) MOTION – STATUTE OF LIMITATIONS

As set forth in more detail below, UMBC argues that Plaintiff's Title IX claim is barred by the applicable statute of limitations.  (ECF No. 6-1 at 10.)   Plaintiff counters that the Complaint lacks any factual allegations that would allow the court to conclude that Plaintiff was on notice of her claims before September 14, 2019 – the date she filed the original complaint regarding J.W. (ECF No. 13 at 6.)

Normally, at this stage, the court does not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *King v. Rubenstein*, 825 F.3d 206, 214 (4th

---

[4] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Cir. 2016) (citation omitted).  "[I]n the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (*en banc*).  "Because Rule 12(b)(6) 'is intended [only] to test the legal adequacy of the complaint,' '[t]his principle only applies . . . if all facts necessary to the affirmative defense clearly appear[ ] on the face of the complaint.'"  *Rich v. Hersl,* 2021 U.S. Dist. LEXIS 118098 *17 (D. Md. Jun. 24, 2021) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) and *Goodman*, 494 F.3d at 464) (citations omitted).  The court is satisfied that all facts necessary to determine whether Plaintiff's claims are time barred appear on the face of the Complaint; therefore, the court will rule on UMBC's challenge that the Complaint is time barred in its entirety.

### 1.      Title IX – Applicable Limitations Period

Title IX provides, in pertinent part: "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]"  20 U.S.C. § 1681(a).

"Title IX does not contain an express statute of limitations . . . ."  *Wilmink v. Kanawha Cnty. Bd. of Educ., 214 Fed. App'x* 294, 296 n.3 (4th Cir. 2007).  "This omission comes as no surprise.  'Congress not infrequently fails to supply an express statute of limitations when it creates a federal cause of action.'"  *Doe. v. Bd. of Educ.*, 888 F. Supp. 2d 659, 663 (D. Md. 2012) (quoting *Reed v. United Transp. Union*, 488 U.S. 319, 323-24 (1989)).  The Supreme Court has "'generally concluded that Congress intended that the courts apply the most closely analogous statute of

limitations under state law.'" *Reed*, 488 U.S. at 323 (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983)).

The applicable statute of limitations for Title IX claims based on sexual misconduct is the applicable state personal injury statute of limitations. *Wilmink*, 214 Fed. App'x at 295-96 & n.3. In Maryland "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Md. Code Ann., Cts. & Jud. Proc. § 5-101. Accordingly, Plaintiff's Title IX claim is subject to a three-year statute of limitations.

### 2. Title IX – Accrual

While courts look to state law to determine the length of the limitations period, federal law governs when a Title IX claim accrues. *Rouse v. Duke Univ.,* 869 F. Supp. 2d 674, 683 (M.D.N.C 2012) (citing *Stanley v. Trs. of the Cal. State Univ.,* 433 F.3d 1129, 1136 (9th Cir. 2006)). Accordingly, a plaintiff's Title IX claim accrues when she has or should have "possession of the critical facts that [s]he has been hurt and who has inflicted the injury." *United States v. Kubrick*, 444 U.S. 111, 122 (1979). In a case such as this, where Plaintiff has alleged deliberate indifference on the part of UMBC, her Title IX claim does not accrue until she "knows or has reason to know that [] [UMBC]," injured her. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 704 (6th Cir. 2022) (emphasis omitted). Therefore, "the clock starts only once the plaintiff knows or should have known that [UMBC] administrators 'with authority to take corrective action' knew of [J.W.'s] conduct and failed to respond appropriately.'" *Id.* at 705 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).

Claim accrual does not require notice or knowledge of all underlying facts, but rather only "sufficient facts about the harm done to [her] that reasonable inquiry will reveal [her] cause of

action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). Therefore, once a plaintiff has knowledge "that [s]he has been hurt and who inflicted the injury . . . the plaintiff is on inquiry notice, imposing on [her] a duty to inquire about the details of [the offense] that are reasonably discoverable." *Id.*

UMBC argues that based on the allegations in the Complaint, Plaintiff's Title IX claim arose, at the latest, in the summer of 2018.  (ECF No. 6-1 at 10.)  Plaintiff counters that there are no facts set forth in the Complaint "from which this Court could properly conclude that V.E. was on notice, prior to September 14, 2019, of UMBC's role in either creating an atmosphere that fostered conduct such as that of J.W., or in mishandling, and indeed, attempting to cover up, J.W.'s sexual assaults and gender-based discrimination after V.E. reported them."[5]  (ECF No. 13 at 6-7.) Plaintiff further argues that the "reasonable inference" drawn from the Complaint is that Plaintiff had no reason to be aware of UMBC's alleged wrongdoing until Saul Ewing issued a report on May 2, 2022, regarding an investigation into alleged sexual misconduct at UMBC.  (ECF No. 13 at 7; ECF No. 9, ¶ 20, n.4.)

In support of Plaintiff's position that she was not aware of her injuries until the Saul Ewing report was issued, Plaintiff relies on *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 704 (6th Cir. 2022)*.*  Plaintiff's reliance on *Snyder-Hill* is misplaced, as this case is materially distinguishable from the facts and dispute at issue in *Snyder-Hill*.  In *Snyder-Hill*, the plaintiffs brought a Title IX claim against Ohio State University alleging that the university's deliberately indifference heightened their risk of abuse by a university physician.  48 F.4th at 689-90.  Although the abuse occurred between 1978 and 1998, it did not become public until 2018.  *Id.*  Once the abuse became

---

[5] September 14, 2019 is three years from the date on which Plaintiff filed her original complaint.  (ECF No. 1.)

public, many survivors brought Title IX claims against Ohio State.  The central issue before the

court was when the statute of limitations began to run.  *Id.* at 698.

Importantly, the *Snyder-Hill* court's analysis focused on a "pre-assault heightened-risk

claim," whereas, here, Plaintiff complains of deliberate indifference by UMBC after Plaintiff was

assaulted by J.W.   The *Snyder-Hill* court explained the difference between the two theories of

Title IX liability:

> . . . a pre-assault heightened-risk claim may not accrue until well
> after a post-assault Title IX claim. A plaintiff will typically know or
> have reason to know that a school mishandles their own report of an
> assault close to the time of the school's inadequate response. But
> that same plaintiff may have no reason to know of a school's
> deliberate indifference that gave rise to their heightened-risk claim.
> It would be "unreasonable to conclude . . . that a plaintiff's
> knowledge that [their] individual complaint was mishandled would
> reveal that the University has a broad *de facto* policy of deliberate
> indifference generally." [*Karasek v. Regents of the Univ. of Cal.*,
> 500 F. Supp. 3d 967,  981 (N.D. Cal. 2020).]  This difference
> distinguishes the plaintiffs' claims from [*King-White v. Humble
> Indep. Sch. Dist.*, 803 F.3d 754, 763 (5th Cir. 2015)], in which the
> Fifth Circuit held that the plaintiffs' post-assault claims accrued
> when their complaints to the school administrations went
> "unheeded." In short, even if a plaintiff has reason to know that a
> school responded improperly to their complaint, they may still lack
> reason to know that others had complained before them or that the
> school was deliberately indifferent to any prior complaints.

48 F.4th at 704.

Although Plaintiff relies on *Snyder-Hill*, she does not allege that UMBC received, and

failed to act on, complaints about J.W. – or was otherwise on notice regarding the risk posed by

J.W. before V.E. was victimized.  The *Snyder-Hill* court reasoned that "it would be difficult for a

'typical lay person' in the plaintiffs' position to know the underlying facts about Ohio State's

alleged deliberate indifference."  48 F. 4th at 704.  Important to the *Snyder-Hill* court's analysis

were the plaintiffs' allegations that Ohio State had received several complaints regarding the

physician's abuse but failed to inform students of the same.  Therefore, the court concluded that none of the plaintiffs "knew or had reason to know that Ohio State administrators were on notice of Strauss's abuse."  *Id.*   In fact, the plaintiffs alleged that Ohio State administrators expressly falsely denied receiving any complaints about the physician.

Here, Plaintiff alleges that UMBC was on notice that J.W. was abusing V.E., because she reported it, and that the school failed to fulfill its Title IX duty to act to protect her:

> During V.E.'s freshman year, she and J.W. began a romantic relationship, which quickly became violent.
>
> J.W. quickly began to exhibit dangerous behavior towards V.E.
>
> During this time, and for months thereafter, J.W. subjected V.E. to a prolonged, repeated, severe and pervasive pattern of sexual assault, relationship violence, sexual intimidation, and sexual harassment.
>
> . . .
>
> V.E. first reported J.W.'s abuse to UMBC at a March 2018 meeting in Cradock's office.
>
> UMBC did nothing to protect V.E., despite having actual knowledge of the abuse.
>
> Upon receiving V.E.'s report, UMBC told V.E. that she, the victim, was responsible for her sexual assault and J.W.'s gender-based violence and intimidation.
>
> UMBC demanded that V.E. conceal J.W.'s sexual, physical, and emotional abuse. UMBC told V.E. it "didn't want this to be a mess on the [UMBC swim] team."
>
> UMBC refused to discipline J.W., and did nothing to prevent his constant gender-motivated harassment of V.E.
>
> UMBC failed to advise V.E. of her rights, the availability of interim protective measures to keep her safe, or other reporting opportunities, such as the Baltimore County Police or the Title IX Office, as UMBC's policy requires.
>
> . . .

8

> V.E., and others, repeatedly told UMBC about J.W.'s gender-based abuse and harassment, and the effect it had on V.E's life and studies.[6]
>
> V.E. informed UMBC that J.W.'s proximity to her dorm room was a serious threat to her safety.
>
> . . .
>
> No one at UMBC notified UMBC's then-Title IX Coordinator until June 24, 2018. On that date, Cradock sent a factually inaccurate memorandum and timeline entitled "Report" to Bobbie Hoye, Esquire, counsel for UMBC.
>
> . . .
>
> V.E.'s report of sexual harassment and assault to Cradock constituted effective actual notice to UMBC and triggered a legal duty to act.

(ECF No. 9, ¶¶ 18-20, 25-30, 43-44, 77, 90.)

While the plaintiffs in *Snyder-Hill* may not have had knowledge that Ohio State was on notice of the physician's abuse, V.E. cannot make such an assertion. The allegations in the Complaint, taken as true, support the court's finding that Plaintiff knew UMBC had notice of J.W.'s abuse in March 2018 because she is the one who reported it to the school. Unlike the *Snyder-Hill* plaintiffs, who claimed that Ohio State's deliberate indifference to complaints regarding the physician created a "heightened risk for abuse," Plaintiff's complaint is focused on

---

[6] This allegation is immediately followed by allegations that:

> "As a result of UMBC's inaction, V.E. was forced to move out of the dorm room she had rightfully earned to avoid further exposure to J.W.'s threats and intimidation."

and

> "After less than a year at UMBC, V.E. was without a place to sleep or live, and was in constant fear of harm from J.W."

(ECF No. 9 ¶¶ 43, 45, 47.)

According to paragraph 15 of the Complaint, V.E. started at UMBC in the Fall of 2017. Therefore, taking Plaintiff's allegations as true, by the Fall of 2018, Plaintiff had complained about J.W. numerous times and, due to UMBC's failure to act, she had become unhoused and lived in a constant state of fear. This timeline further persuades the court that by the Fall of 2018, according to the Complaint, V.E. was aware that UMBC's inaction caused her considerable injury.

whether UMBC was deliberately indifferent to her reports of abuse by J.W.  (ECF No. 9 ¶ 93.) Plaintiff does not complain that her injury arises from UMBC's creation of a heightened risk that she would be abused by J.W. by virtue of it turning a blind eye to notice of J.W.'s abuse of others. The case at bar is more analogous to *King-White v. Humble Indep. Sch. Dist.,* 803 F.3d 754 (5th Cir. 2015)*.*

In *King-White*, plaintiffs brought a Title IX claim alleging that, as a high school student, A.W. was sexually abused by her high school dance instructor from 2009 through 2011.  *Id.* at 756.  On October 23, 2013, the dance instructor pled guilty to an improper relationship with A.W. The plaintiffs filed their Title IX claim on December 4, 2013.   The *King-White* court held that the claim was barred.  In so holding, the court rejected the plaintiffs' arguments that their Title IX claim "could not have accrued until they became aware of certain facts about the School Officials' conduct and HISD's policies during the pendency of [the dance instructor's] criminal case." Instead, the court reasoned:

> . . . the circumstances alleged in Plaintiffs' complaint would undoubtedly have prompted a reasonable person to investigate HISD's and the School Officials' conduct further. A.W. was sadly quite aware of the abuse she suffered, and she was also aware that her abuser was her teacher. King-White knew that A.W. was living with her teacher—in fact, she consented to the arrangement—and she also personally complained to the School Officials about the relationship between [the dance instructor] and A.W. Thus, even framing the injury as the failure to stop [the dance instructor's] abuse, rather than the abuse itself, Plaintiffs' allegations demonstrate that A.W. and King-White were both sufficiently aware of the facts that would ultimately support their claims by the time A.W. turned 18 in the spring of 2011. While they may not have known about complaints from other parents or certain alleged HISD "policies," a reasonable person who knew that her daughter was living with a teacher, and who had already lodged complaints with administrators that had gone unheeded, would have investigated further.

*Id.* at 762-63.

10

Here, Plaintiff alleges:

> V.E accepted admission to UMBC with an athletic scholarship and began her collegiate career in the Fall of 2017.
>
> . . .
>
> V.E. first reported J.W.'s abuse to UMBC at a March 2018 meeting in Cradock's office.
>
> . . .
>
> [In April 2018], a UMBC Police officer filed a Petition for Emergency Evaluation of J.W. The officer accurately testified that J.W. presented a danger to the life or safety of himself or others, presumably including V.E.
>
> . . .
>
> As a result of UMBC's inaction, V.E. was forced to move out of the dorm room she had rightfully earned to avoid further exposure to J.W.'s threats and intimidation.
>
> . . .
>
> After less than a year at UMBC, V.E. was without a place to sleep or live, and was in constant fear of harm from J.W.
>
> . . .
>
> No one at UMBC notified UMBC's then-Title IX Coordinator until June 24, 2018. On that date, Cradock sent a factually inaccurate memorandum and timeline entitled "Report" to Bobbie Hoye, Esquire, counsel for UMBC.
>
> Hoye sent V.E. an email regarding the "Report" but took no other action.
>
> . . .
>
> UMBC employees failed to timely report to the Title IX Coordinator. Cradock instead forced her into direct contact and other interactions with her abuser.
>
> . . .
>
> Cradock was a "Responsible Employee," as defined by UMBC and was required to take action to address J.W.'s conduct and report the information he had about J.W.'s prohibited conduct to the Title IX Coordinator immediately.
>
> . . .

11

> V.E.'s report of sexual harassment and assault to Cradock constituted effective actual notice to UMBC and triggered a legal duty to act.
>
> UMBC thus had a duty to ac[t] after learning of J.W.'s sexual coercion, discrimination and harassment of V.E.

(ECF No. 9, ¶¶ 15, 25, 42, 45, 47, 77-78, 80, 87, 90-91.)

Plaintiff details grievous, ongoing sexual assault and harassment by J.W. that she and others reported to UMBC. Notwithstanding Plaintiff's horrendous undergraduate experience, under the most permissive construction of the allegations, Plaintiff's claim accrued no later than the Fall of 2018. *See* n.6, *supra*. Plaintiff first reported J.W.'s abuse in March of 2018, in response to which UMBC responded by telling her, in essence, it was her problem and the school would not protect or help her. By June 24, 2018, Plaintiff had reported J.W.'s sexual harassment to UMBC several times (and in several ways) to no avail; and, therefore, Plaintiff felt she had no reasonable alternative but to live in a state of houselessness to protect herself from J.W. *See Snyder-Hill*, 48 F.4th at 705 (quoting *Gebser,* 524 U.S. 274, 290 (1998)) (holding that "the clock starts only once the plaintiff knows or should have known that Ohio State administrators 'with authority to take corrective action' knew of Strauss's conduct and failed to respond appropriately.") Because Plaintiff did not file her Complaint until September 2022, her Title IX claim is time barred.

## CONCLUSION

For the reasons set forth herein, by separate order, the Motion will be granted and the Complaint will be dismissed with prejudice.

/S/_____
Julie R. Rubin
United States District Judge